WAUKESHA GAS & ELECTRIC COMPANY, Appellant, vs. RAILROAD COMMISSION OF WISCONSIN, Respondent.

*December 7, 1926—January 11, 1927.*

*Public utilities: Rates fixed by railroad commission: Valuation of property used as basis: Original cost plus additions: Rule in federal court: Reproduction cost less depreciation.*

1. In fixing rates to be charged by a gas company, the railroad commission, to arrive at the valuation of the property of the utility, took a valuation made by it in 1912, added thereto the cost of additions since made, the increase of land values, and the cost of materials and supplies on hand plus working capital. *Held,* that the method employed by the commission does not substantially reflect or agree with present or recent reproduction cost less depreciation as required by the federal rule (*McCardle v. Indianapolis Water Co.* 47 Sup. Ct. 144), and is set aside as confiscatory and unreasonable.  pp. 567, 568.

2. A public utility is entitled to the present fair value of its property as the basis for rate-making; and a valuation which does not, as to the tangible property, reflect the then cost of reproduction less depreciation, cannot stand the test of the federal rule.  p. 569.

3. While original cost plus cost of additions may form the basis of a valuation during a period of fairly stable prices, it does not do so as applied to prices from 1912 and earlier down to 1922.  p. 569.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action to test the lawfulness or reasonableness of gas rates fixed by the *Railroad Commission* May 2, 1922. On October 20, 1920, the *Commission* had fixed a net rate of $2.10 per M. cubic feet for the first 10,000 cubic feet consumed per month, with a progressive reduction for a larger consumption. On May 2, 1922, the *Commission* fixed a net rate of $1.70 per M. cubic feet for the first 10,000 cubic feet consumed per month, with a like progressive reduction for larger consumption. On December 15, 1922, the *Commission* fixed a net rate of ·$1.85 per M. cubic feet for the first 10,000 cubic feet of gas consumed per month, and a like progressive reduction for a larger consumption. Only the rates fixed May 2, 1922, are in issue. Plaintiff gave a bond to indemnify consumers and was permitted to collect and has collected the original rates of October, 1920.

The valuation fixed upon the plaintiff's property as a basis for the rates of May 2, 1922, was $335,000. The *Commission* fixed the valuation in December, 1922, at $360,000.

The testimony on the part of the plaintiff was that the value of its property, based chiefly upon cost of reproduction less depreciation, in May, 1922, was $554,000. The net income of plaintiff's business in 1922 was approximately $51,173.50, *based upon the rates of 1920* as shown by its own books. It is also undisputed that plaintiff collected $17,867.76 more than it could have collected had the December 1922 rates been applied instead of the 1920 rates. It also appears that the sum of $9,430.52 should be added to the sum of $17,867.76 as an additional excess amount collected if the May 1922 rates were used as the basis. The substantial correctness of these figures may be tested by the fact that from April, 1922, to May, 1923, the company produced 71,604,900 cubic feet of gas. The basic reduction in price from the 1920 rates was forty cents per M. cubic feet,

but owing to the progressive reductions it would average less. At forty cents per M. cubic feet the lessened income would be $28,641.60. The actual reduction as shown by the books of the company was $27,298.28. Hence the net income of $51,173.52 based upon the 1920 rates must be diminished by the sum of $17,867.76 and $9,430.52 or by $27,298.28, leaving the sum of $23,875.24 as the net income under the rates of May 2, 1922.

On a valuation of $335,000 the net income would yield slightly more than seven per cent.; a lawful and reasonable rate. On a valuation of $554,000 it would yield about 4.3 per cent., an unreasonable rate.

The trial court affirmed the order of the *Railroad Commission,* and the plaintiff appealed.

For the appellant there were briefs by *Jacobson & Malone* of Waukesha, and oral argument by *M. A. Jacobson.*

For the respondent there was a brief by the *Attorney General* and *T. L. McIntosh,* assistant attorney general, and oral argument by *Mr. McIntosh.*

VINJE, C. J. It is obvious from the foregoing statement of facts that the chief question for review is the validity of the valuation of $335,000 placed upon the property of plaintiff as the basis for the May 1922 rates. If that valuation stands the test of the federal rule the judgment must be affirmed; if it does not it must be reversed.

It appears from the *Commission's* decision that it arrived at its valuation by taking that made in 1912 and adding thereto the costs of additions since made, by increasing the land value, and by adding cost of materials and supplies on hand plus working capital. See 13 Wis. R. R. Comm. Rep. 100; 22 Wis. R. R. Comm. Rep. 672; and 181 Wis. 281, 303, 194 N. W. 846. Some contention is made as to the amount of going value and working capital, but as the case turns on the proper basis of valuation of tangible property

we do not reach these contentions. The valuation of the *Commission* does not substantially reflect the increase in the value of any of plaintiff's property except its land. Original cost, reaching back over a period of more than ten years, plus cost of additions since made, is the main basis used for valuing plaintiff's tangible property, except the land. This is not in accordance with the federal rule. In *McCardle v. Indianapolis Water Co.* (U. S.) 47 Sup. Ct. 144, the court says:

"It is well established that values of utility properties fluctuate, and that owners must bear the decline and are entitled to the increase. The decision of this court in *Smyth v. Ames,* 169 U. S. 466, 547, 18 Sup. Ct. 418, declares that to ascertain value 'the present as compared with the original cost of construction' are, among other things, matters for consideration. But this does not mean that the original cost or the present cost, or some figure arbitrarily chosen between these two, is to be taken as the measure. The weight to be given to such cost figures and other items or classes of evidence is to be determined in the light of the facts of the case in hand. By far the greater part of the company's land and plant was acquired and constructed long before the war. The present value of the land is much greater than its cost; and the present cost of construction of those parts of the plant is much more than their reasonable original cost. In fact, prices and values have so changed that the amount paid for land in the early years of the enterprise and the cost of plant elements constructed prior to the great rise of prices due to the war do not constitute any real indication of their value at the present time. *Standard Oil Co. v. Southern Pac. Co.* 268 U. S. 146, 157, 45 Sup. Ct. 465; *Georgia R. & P. Co. v. Railroad Comm.* 262 U. S. 625, 630, 631, 43 Sup. Ct. 680; *Bluefield W. W. & Imp. Co. v. Public Service Comm.* 262 U. S. 679, 691, 692, 43 Sup. Ct. 675; *State ex rel. Southwestern Bell Tel. Co. v. Public Service Comm.* 262 U. S. 276, 287, 43 Sup. Ct. 544."

In the *McCardle Case* a valuation made substantially like that of the *Commission* in the present case was set aside by

the court because, in view of the great advance in prices during and after the war, it did not correctly reflect the actual value of the property as of the time the valuation is made, which is the date of the order fixing the rate and the probable value for some years to come. A valuation which does not as to the tangible property substantially reflect the then cost of reproduction less depreciation does not meet the requirements. The utility is entitled to the present fair value of its property as a basis for rate-making. Hence, where there has been a period of rising prices for many years, original cost plus cost of additions do not correctly measure the present value. Such a method may form the main basis of a valuation during a period of fairly stable prices, but it does not as applied to prices from 1912 and earlier down to 1922. Since the basic result to be reached is the present and near future fair value of the property, any method that will accomplish that result is a proper method. It is doubtful if any method will accomplish such result unless it substantially reflects or agrees with present or recent reproduction cost less depreciation. The method employed by the *Commission* in the instant case does not do so, and under the federal rule referred to must be set aside as confiscatory and unreasonable. Expressions to the contrary in *Waukesha G. & E. Co. v. Railroad Comm.* 181 Wis. 281, 194 N. W. 846, are modified to conform to the rule announced in *McCardle v. Indianapolis Water Co.* (U. S.) 47 Sup. Ct. 144.

*By the Court.*—Judgment reversed, and the order of the *Commission* of May 2, 1922, is vacated and set aside as unreasonable and confiscatory.

STEVENS, J., took no part.